IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3053-F

| | | |
|---|---|---|
| RICKY LEANDER GAMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GEORGE KENWORTHY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' motions to dismiss [DE-23] and Plaintiff's motion to amend [DE-27]. For the following reasons, Plaintiff's motion to amend is ALLOWED, Defendants' motion to dismiss is DENIED WITHOUT PREJUDICE, and Plaintiff's claims against Defendant Giddions are DISMISSED WITHOUT PREJUDICE.

## I. STATEMENT OF THE CASE

On March 8, 2012, Plaintiff, an inmate in the custody of the State of North Carolina proceeding pro se, filed this action against Defendants alleging, *inter alia*, violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. Specifically, Plaintiff claims that Defendants did not allow him to receive special "Halal" food items during the Islamic feast of "Eid al Fitr." Compl. [DE-1], pp. 3-4.

This court determined that Plaintiff's complaint survived frivolity review pursuant to 28 U.S.C. § 1915 on June 20, 2012. June 20, 2012 Order [DE-7]. Thereafter, the Clerk of Court entered an order of investigation [DE-8], pursuant to this District's Prisoner Representation Plan, instructing North Carolina Prisoner Legal Services, Inc. ("NCPLS"), to investigate Plaintiff's claims.

NCPLS opined on September 18, 2012 that appointment of counsel was not required in this action. Response to Order of Investigation [DE-18]. The Clerk of Court notified Plaintiff on November 13, 2012 that Defendant Giddions had not yet been properly served.[1] November 13, 2012 Notice [DE-22]. Plaintiff was instructed to show good cause for his failure to serve Defendant Giddions, and also informed that, if he failed to respond, his claim again Defendant Giddions would be dismissed without prejudice. Id. Defendants filed their motion to dismiss [DE-23] on November 16, 2012. Plaintiff was notified about the motion to dismiss, the consequences of failing to respond, and the response deadline. November 16, 2012 Rule 12 Letter [DE-25]. On November 28, 2012, Plaintiff responded [DE-26] to the Clerk of Court's November 13, 2012 show cause order [DE-22] stating, with little elaboration, that it was "no fault of his own that the United States Marshal Service was unable to make service." Pl. Show Cause Resp. [DE-26], p. 1. Plaintiff filed a motion to amend his complaint [DE-27] and his response [DE-28] to Defendants' motion to dismiss on December 12, 2012. Defendants filed a response in opposition [DE-29] to Plaintiff's motion to amend on February 8, 2013. Defendants' motion to dismiss and Plaintiff's motion to amend are now ripe for ruling.

## II. STATEMENT OF THE FACTS

Plaintiff, a practicing Muslim, asserts that on September 1, 2011[2] Defendants did not allow him to receive special "Halal" food items from outside Tabor to observe the Islamic feast of "Eid

---

[1] Prior to issuing this notice, the court attempted to serve Defendant Giddions on Plaintiff's behalf. See, [DE's-11, 12, 14, 15, 16, 20].

[2] In 2011, Plaintiff was housed at Tabor Correctional Institution ("Tabor"). Compl. [DE-1], p. 2. Plaintiff is currently housed at Scotland Correctional Institution. N.C. Div. Adult Prisons, P u b l i c   O f f e n d e r   I n f o . , http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0140357&searchLastName=gamble&searchFirstName=Ricky&listurl=pagelistoffendersearchresults&listpage=1 (last visited August 30, 2013).

al Fitr" during the month of Ramadan. Compl. [DE-1], pp. 2-3. He asserts that these special foods are "essential in practicing the religion of Islam." Id. at p. 4. During this time, Plaintiff was "confined in segregation 'control' long term-lock up," and he contends that general population inmates were permitted to receive these special food items. Id. at p. 3. Furthermore, he asserts that "punishment was [Defendants'] main objective . . . for" depriving him of access to the Halal food items. Id. Likewise, he claims that receiving these items from outside Tabor was not a "security issue" because "the food containers have to be clear and disposable and subject to searches." Id. at p. 4.

Plaintiff exhausted his administrative remedies before filing his complaint. Specifically, on July 6, 2011, Defendant Hovis, the chaplain at Tabor, distributed a notice indicating that "any Control Status . . . Islamic inmate making proper request, will be allowed to fast during the month of Ramadan." Pl. Ex. [DE-1-1], p. 6. However, it was also noted that "such inmates will not be allowed to receive special food from outside the institution for the Eid al Fitr." Id.

Plaintiff wrote Defendant Hovis a letter dated August 9, 2011. Id. at p. 9. In this letter he stated that he "should be allow[ed] to partake in the 'Eid al fitr' feast . . . because it is part of the 'Islamic Religion Ritual.'" Id. at p. 10. He further asserted that other Muslims at Tabor were permitted to receive "special food" from outside the institution. Id. Likewise, he indicated that he "believe[d] that [his] rights to 'exercise [his] religion' [had] been unfairly restricted" and that "being on control status . . . does not constitute a justifiable reason." Id.

Defendant Hovis responded to Plaintiff by noting that "the decision . . . was not to exclude control inmates from the feast . . . [but rather] not to allow inmates on control status to receive any outside food for the feast." Id. at p.11. Moreover, Defendant Hovis informed Plaintiff that

3

"[a]rrangements have been made . . . with food services to provide . . . [a meal] enhanced by fruit punch, desserts and other 'special items.'" Id.

Defendant Kenworthy also responded to Plaintiff's letter on September 6, 2011. Id. at p. 12. He reiterated that no inmates at Tabor were "denied the opportunity to take part in the Eid al Fitr feast." Id. at p. 12. However, Plaintiff was again informed that inmates on control status would not be permitted to bring in food from outside Tabor for the feast. Id.

On November 9, 2011, Plaintiff submitted a grievance form regarding his observance of the Eid al Fitr. Id. at pp. 1-3. Plaintiff stated that Defendants "did not allow [him] . . . to receive[] special Islamic 'Halal' food items from outside the institution for the 'Eid al Fitr.'" Id. at p. 1. To properly observe this institution, Plaintiff noted the he should have been permitted "to receive[] special foods (Halal) prepared in an Islamic fashion[] by a Muslim chef or server." Id. at p. 2. He also stated that inmates in general population were permitted to receive these special foods, but inmates in segregation were not. Id. at pp. 1-2. Furthermore, Plaintiff asserted that he did not receive the special food items that Defendant Hovis indicated would be provided by food services for the Eid al Fitr. Id. at pp. 2-3. However, Plaintiff did receive an "extra cake with [his] regular meal." Id. at p. 3. Nonetheless, Plaintiff argued that the food he was provided "does not constitute a 'feast'[,] especially a 'holy ritual feast.'" Id.

Prison officials responded to Plaintiff's grievance on January 24, 2012, reiterating the points emphasized in Defendant Hovis' earlier notice. Id. at p. 4. Specifically, Plaintiff was informed that "any control status . . . Islamic inmate making proper request, will be allowed to fast during the month of Ramadan . . . [but] [f]amily members of any inmate on control status should be informed that no food will be received from them." Id. Contrary to Defendant Hovis' earlier statements,

4

Plaintiff was informed that he would "receive [his] regular good tray from . . . Food Services." Id. Plaintiff appealed this decision. Id. On February 3, 2012, Plaintiff was informed that "it appears that staff ha[d] adequately addressed [Plaintiff's] . . . concerns," and Plaintiff's grievance was deemed resolved. Id. at p. 5.

Plaintiff now seeks, *inter alia*, 1) a declaratory judgment that Defendants denied him the opportunity to participate in the Eid al Fitr feast, in violation of RLUIPA and the First Amendment; 2) an injunction ordering Defendants to "immediately stop depriving and denying inmates in segregation and/or control status the opportunity to take part in the 'Eid al Fitr' feast of the 'Muslim' faith"; and 3) compensatory and punitive damages. Id. at pp. 4-7.

### III. DISCUSSION

#### A. Plaintiff's Motion to Amend and Defendants' Motion to Dismiss

Plaintiff has filed a motion [DE-27] to amend his complaint, his first such request. Pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, a Plaintiff may amend his complaint once as a matter of course within 21 days after the earlier of: 1) service of a responsive pleading; or 2) service of a motion under Rule 12(b), (e), or (f). After expiration of this time period, a party may amend only with either the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Defendants filed their motion to dismiss on November 16, 2012 [DE-23], and the instant motion to amend [DE-27] was filed on December 12, 2012. Thus, Plaintiff did not file his request within the time frame necessary for this to be considered an amendment as a matter of course.

Regardless, under Rule 15, a "motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." Nourison Rug Corp. v.

5

Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); see Foman v. Davis, 371 U.S. 178, 182 (1962). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman, 371 U.S. at 182; see Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP, 551 F.3d 305, 313 n.3 (4th Cir. 2009); Nourison, 535 F.3d at 298.

Plaintiff's motion does not appear to have been filed in bad faith and would not be prejudicial to Defendants. Indeed, had Plaintiff filed his motion five days earlier, he would have been entitled to amend as of right. Conversely, however, Plaintiff offers little argument in support of his request. Specifically, Plaintiff states that he "has received the Defendants['] motion to dismiss . . . [and] therefore moves this court to allow him to amend the complaint." Pl. Mot. to Am. [DE-27]. Plaintiff does not proffer any further argument in support of his request, nor does he attach his proposed amendments.

Defendants contend that motions to amend brought for the purpose of circumventing dispositive motions are disfavored, citing Googerdy v. N.C. Agric. & Tech. State Univ., 386 F. Supp. 2d 618 (M.D.N.C. 2005). Googerdy, however, is distinguishable. For example, the Googerdy plaintiff had already availed himself of the right to amend his complaint once as a matter of course. Id. at 622. Furthermore, the Googerdy plaintiff was represented by counsel, and the Googerdy court specifically found that the proposed amendment would be prejudicial. Id. at 623. Finally, the motion to amend in Googerdy did not comply with that court's local rules. Id.

In addition, Defendants argue that because Plaintiff's current complaint fails to state a viable claim, "Plaintiff's amended complaint would face an identical motion to dismiss [for] failure to state a claim . . . which renders Plaintiff's amendments futile." Def. Resp. [DE-29], pp. 9-10. Based on this argument, the court will briefly address the merits of Plaintiff's complaint and Defendants'

motion to dismiss.

As noted above, Plaintiff asserts, *inter alia*, violations of RLUIPA. RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Under RLUIPA, the inmate initially must show that the challenged policy substantially burdens the exercise of his religion. See 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted). The court may "not judge the significance of the particular belief or practice in question." Id. at 187 n.2.

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith, 578 F.3d at 250. "RLUIPA adopts a . . . strict scrutiny standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quotation omitted). Therefore, "'a court should not rubber stamp

7

or mechanically accept the judgments of prison administrators.'" Id. at 201 (quoting Lovelace, 472 F.3d at 190). "Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Id. (quoting Lovelace, 472 F.3d at 190).

In their motion to dismiss Plaintiff's RLUIPA claim, Defendants only address the "substantial burden" prong of this analysis. They do not address whether the accommodations they made for Plaintiff regarding the Eid al Fitr feast were the least restrictive means of furthering a compelling governmental interest. Defendants' failure to address this issue weakens their argument. Cf. French v. Maryland Div. of Correction, Nos. CCB-11-2142, CCB-11-3301, 2103 WL 1104995, at * 7 (D. Md. March 15, 2013) (assuming, without deciding, that denial of Eid al Fitr feast could be a substantial burden). On the record currently before the court, Plaintiff's amendments would not necessarily be futile.

Ultimately, leave to amend "shall be given when justice so requires." Fed. R. Civ. P. 15(a)(2). Given this liberal standard, Plaintiff's motion to amend is GRANTED and Defendants' motion to dismiss is DENIED WITHOUT PREJUDICE. Plaintiff shall file his amended complaint no later than October 1, 2013, and Defendants shall file their answer or otherwise respond to the amended complaint no later than October 31, 2013. Finally, Plaintiff is admonished that any further requests to amend his claims will be strongly disfavored.

## B. Plaintiff's failure to properly serve Defendant Giddions

The court has unsuccessfully attempted to serve Defendant Giddions on behalf of Plaintiff. See [DE-11, 12, 14, 15, 16, 20]. On November 13, 2013, Plaintiff was notified by the Clerk of Court that he had not yet served Defendant Giddions. November 13, 2012 Notice [DE-22]. Plaintiff was

instructed that he had "14 days from receipt of this notice to show good cause to the court for [his] failure to serve [Defendant] Giddions." Id. Finally, the notice stated that Plaintiff status "as a prisoner or a pro se litigant does not now satisfy good cause given the court's attempt to make service" and that failure to respond to the notice would result in his claim against Defendant Giddions being dismissed without prejudice. Id.

Plaintiff responded on November 28, 2012. Pl. Show Cause Resp. [DE-26]. In his response, Plaintiff asserted that "it was no fault of his own that the United States Marshal was unable to make service." Id. at p. 1. He also argued that his claim against Defendant Giddions should not be dismissed because "Plaintiff is a prisoner and pro se litigant." Id. Other than his status as a prisoner and a pro se litigant, Plaintiff provides no explanation for his failure to serve Defendant Giddions. Id. at pp. 1-2. In short, Plaintiff has failed to appropriately respond to the Clerk of Court's show cause order, and therefore his claims against Defendant Giddions are DISMISSED WITHOUT PREJUDICE.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's motion to amend [DE-27] is ALLOWED, Defendants' motion to dismiss [DE-23] is DENIED WITHOUT PREJUDICE, and Plaintiff's claims against Defendant Giddions are DISMISSED WITHOUT PREJUDICE. Plaintiff shall file his amended complaint no later than October 1, 2013, and Defendants shall file their answer or otherwise respond to the amended complaint no later than October 31, 2013.

SO ORDERED. This the 3 day of September, 2013.

*James C. Fox*

JAMES C. FOX
Senior United States District Judge

10