IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3053-F

| | | |
|---|---|---|
| RICKY LEANDER GAMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GEORGE KENWORTHY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' motion for summary judgment [DE-38]. For the following reasons, this motion shall be ALLOWED.

## I. PROCEDURAL BACKGROUND

On March 8, 2012, Plaintiff, an inmate in the custody of the State of North Carolina proceeding pro se, filed this action against Defendants alleging violations of the First Amendment of the United States Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. Specifically, Plaintiff claims that, while he was incarcerated at Tabor Correctional Institution ("Tabor"), Defendants did not allow him to receive special "Halal" food items during the Islamic feast of "Eid al Fitr." Compl. [DE-1], pp. 3-4.

The court determined that Plaintiff's complaint survived frivolity review and directed the Clerk of Court to maintain management of the matter on June 20, 2012 [DE-7]. Defendants filed a motion to dismiss [DE-23] on November 16, 2012 and Plaintiff sought leave to amend his complaint on December 12, 2012 [DE-27]. Defendants' motion to dismiss was denied without prejudice and Plaintiff's motion to amend was allowed in the court's September 3, 2013 Order [DE-30]. On

August 4, 2014, the undersigned dismissed Plaintiff's claims for injunctive relief, noting that they were now moot because Plaintiff has been transferred to Warren Correctional Institution ("Warren")[1]. *See* August 4, 2014 Order [DE-33], p. 2. Plaintiff filed his amended complaint [DE-34] on August 18, 2014. Defendants filed the instant motion for summary judgment on December 12, 2014 [DE-38]. Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (per curiam), the court notified Plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadlines [DE-40]. Plaintiff has filed several responses [DE-42, 43, 44], and the motion for summary judgment is now ripe for adjudication.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard of review

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249.

---

[1] Plaintiff has since been transferred from Warren to Lumberton Correctional Institution to complete a drug treatment program [DE-41].

In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

**B. Discussion**

As noted above, Plaintiff raises claims pursuant to the First Amendment and RLUIPA. His claims for injunctive relief have already been dismissed as moot due to his transfer out of Tabor. Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claim for injunctive or declaratory relief."). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling government interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a). Although RLUIPA provides an avenue for an inmate to remove a substantial burden on his religious exercise through injunctive relief, it "does not authorize claims for official or individual capacity damages." Sossaman v. Texas, 131 S.Ct. 1651, 1663 (2011) (finding that RLUIPA does not authorize a private cause of action for money damages against prison personnel for action taken in their official capacity); Rendleman, 569 F.3d at 198. Moreover, as is the case for claims under § 1983, a claim for injunctive or declaratory relief under RLUIPA is moot once a prisoner is transferred to another facility. See Rendleman, 569 F.3d at 186. Accordingly, because Plaintiff cannot recover monetary damages under RLUIPA and because his request for declaratory and injunctive relief is moot, Defendants' Motion for Summary Judgment [DE-38] is ALLOWED as to this claim. The court shall now analyze Plaintiff's sole remaining claim: his claim for damages pursuant to § 1983.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law

3

... prohibiting the free exercise" of religion. U.S. Const. amend. I. However, a prisoner does not enjoy the full range of freedoms as those not incarcerated. Rather, state action violates a prisoner's religious rights if it burdens his constitutional rights and is not reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987); see O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). A prisoner asserting a violation of his Free Exercise rights must show that he sincerely holds his religious beliefs. See Hines v. S.C. Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998). He also must show that the actions of which he complains substantially burden his religious exercise and the actions are not reasonably related to legitimate penological interests. See O'Lone, 482 U.S. at 349; Hines, 148 F.3d at 358.[2]

In evaluating a prisoner's claim that a prison policy violates his First Amendment rights, the court must evaluate four factors to determine whether the policy is reasonably related to a legitimate penological interest. See Turner, 482 U.S. at 89-90.

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally? And, fourth, are ready alternatives for furthering the governmental interest available?

Beard v. Banks, 548 U.S. 521, 529 (2006) (internal citations and quotations omitted); see Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001).

With regard to the appropriate balancing of these factors, the Supreme Court has stated "that evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution

---

[2] The Supreme Court has recently reiterated that RLUIPA provides greater protections to the practice of religion than the First Amendment. Holt v. Hobbs, 135 S. Ct. 853, 862 (2015).

4

under examination." O'Lone, 482 U.S. at 349 (quotations omitted). Indeed, "[p]rison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise."Holt v. Hobbs, 135 S. Ct. 853, 864 (2015).

Here, Plaintiff, a practicing Muslim,[3] asserts that on September 1, 2011, Defendants did not allow him to receive special food items from outside Tabor to observe the Islamic feast of Eid al Fitr[4] during the month of Ramadan. Compl. [DE-1], pp. 2-3. He asserts that these special foods are "essential in practicing the religion of Islam." Id. at p. 4. During this time, Plaintiff was a "control status" inmate at Tabor, meaning he was subject to a heightened security level due to disciplinary infractions. Hovis Aff. [DE-38-1] ¶ 5. Specifically, Plaintiff was "confined in segregation 'control' long term-lock up," and he contends that general population inmates were permitted to receive these special food items. Compl. [DE-1], p. 3. Furthermore, he claims that receiving these items from outside Tabor was not a "security issue" because "the food containers have to be clear and disposable and subject to searches." Id. at p. 4. Defendant Hovis, a chaplain, was responsible for facilitating Eid al Fitr services for Tabor's Muslim inmate population. Hovis Aff. [DE-38-1] ¶ 9.

Before the events described in Plaintiff's complaint, during Ramadan and Eid al Fitr in 2010, control status inmates at Tabor were allowed food which was prepared either by an outside volunteer group or inmate's family. Id. ¶ 17. The inmates ultimately became dissatisfied with the food they

---

[3] Defendants do not challenge the sincerity of Plaintiff's beliefs.

[4]"Eid al Fitr" is a celebration in the Islamic faith which follows the month of Ramadan. Hovis. Aff. [DE-38-1] ¶ 10. This celebration consists of a prayer service and a special meal Id.; see also Banks v. Beard, No. 3:CV-10-1480, 2013 WL 5465165, at *2 (M.D. Pa. Sept. 30, 2013) ("On Eid al-Fitr, which is celebrated . . . at the completion of Ramadan, Muslims show their joy for their health, strength and the opportunities of life which Allah has given to them to fulfill their obligation of fasting and other good deeds during the blessed month of Ramadan.").

5

Case 5:12-ct-03053-F Document 45 Filed 02/12/15 Page 5 of 8

received and caused a disturbance. Id. Specifically, the control status inmates kicked their cell doors and incited other inmates. Id. Pepper spray was used to end the disturbance. Id.

Prior to the 2011 Eid al Fitr, Defendant Hovis, distributed a notice indicating that "any Control Status . . . Islamic inmate making proper request, will be allowed to fast during the month of Ramadan." Pl. Ex. [DE-1-1], p. 6. In addition, the notice also stated that control status inmates would receive a "special meal" during the Eid al Fitr celebration. Hovis Aff. [DE-38-1] ¶ 11. This special meal would consist of the regular menu enhanced by fruit punch, desserts and other special items. Id. However, it was also noted that control status "inmates will not be allowed to receive special food from outside the institution for the Eid al Fitr." Pl. Ex. [DE-1-1], p. 6. In sum, control status inmates at Tabor were not told that they could not participate in Ramadan by fasting, nor were they told that they would not receive any special food for the Eid al Fitr. Hovis Aff. [DE-38-1] ¶ 23. Rather, they were simply instructed that they would not be allowed to receive food from outside the institution for the Eid al Fitr. Id. Moreover, the prohibition of outside food for control status inmates was not limited to Islamic inmates, but rather was "observed across all Faith Groups for observed feasts." Id. ¶ 24.[5] The decision to not permit food from outside the institution was based in part on the 2010 disturbance. Id. ¶ 19.

To ensure that control status inmates at Tabor received a special meal for the Eid al Fitr, Defendant Hovis coordinated with a food services manager. Id. ¶ 20. On September 1, 2011, control

---

[5] Accordingly, any potential equal protection claim asserted by Plaintiff fails. "To state a Fifth Amendment claim for violation of equal protection, plaintiff must allege facts sufficient to show that he was treated differently from other 'similarly situated' inmates and the 'unequal' treatment resulted from either intentional or purposeful discrimination." Harrison v. Watts, 609 F. Supp.2d 561, 567 (E. D. Va. 2009) (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Here, Plaintiff has failed to make a threshold showing of disparate treatment, as he was treated identically to other similarly situated inmates (i.e. inmates on control status).

6

status inmates received food service trays with larger portions, punch and cake to celebrate the Eid al Fitr. Id. ¶ 22. Plaintiff concedes that he received these items, although he argues that they should not be considered a "holy feast" as required during Eid al Fitr. Pl. Ex. [DE-1-1], pp. 2-3.

The court concludes that Defendants did not substantially burden Plaintiff's religious exercise. Plaintiff was not prohibited from participating in the Eid al Fitr feast. On the contrary, Defendants made special accommodations to Plaintiff, as well as other control status Islamic inmates, to ensure that they received a special meal for the feast. Id. [DE-38-1] ¶¶ 20, 22, 26. The denial of outside sources of food to contribute to this feast does not constitute a substantial burden on Plaintiff's religious exercise. See Muhammad v. Wade, No. 1:09CV939 GBL/IDD, 2011 WL 837125, at *7 (E.D. Va. Mar. 2, 2011) (finding "that the . . . policy that allowed [an inmate plaintiff] to have Eid-ul-Fitr prayer but no Eid-ul-Fitr feast . . . did not substantially burden plaintiff's First Amendment rights.").

Morever, even if Plaintiff had demonstrated a burden on his religious exercise, Defendants' actions were reasonably related to legitimate penological interests. Specifically, Defendants argue that the prohibition on outside food for the Eid al Fitr was related to the interest of preserving institutional security and maintaining order within the facility. First, permitting outside food to be brought into a prison could lead to the introduction of contraband. Defendants have a compelling interest in ensuring that control status inmates do not obtain contraband. See Holt, 135 S. Ct. at 863 ("We readily agree that [a prison] has a compelling interest in staunching the flow of contraband into and within its facilities"). Likewise, Defendants previously permitted the introduction of outside food, and inmate dissatisfaction with the outside food ultimately resulted in a disturbance that required pepper spray to quell. Hovis. Aff. [DE-38-1] ¶ 17. Defendants have a compelling interest

7

in avoiding similar incidents, and were permitted to change their policy regarding outside food for the Eid al Fitr. Holt, 135 S. Ct. at 867 (noting that "even if a claimant's religious belief is sincere, an institution might be entitled to withdraw an accommodation if the claimant abuses the exemption in a manner that undermines the prison's compelling interests").

Finally, even if the Turner factors were not satisfied, Plaintiff's Free Exercise claim still fails because he cannot establish that Defendants intentionally violated his Free Exercise rights. See Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir.2006) (only intentional conduct is actionable under the Free Exercise Clause); Griffith, No. 3:06CV308-1-MU, 2009 WL 3722804, at *4 (dismissing Free Exercise claim because, *inter alia*, that plaintiff had "not established that either Defendant acted intentionally to deprive him of his rights under the Free Exercise Clause of the First Amendment"). On the contrary, the record clearly indicates that Defendants' intention was to permit Plaintiff to celebrate the Eid al Fitr feast. See, e.g., Hovis Aff. [DE-38-1], ¶¶ 20, 22, 26. For these reasons, Defendants are entitled to judgment on Plaintiff's claim.

### III. CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment [DE-38] is ALLOWED, and the Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 12 day of February, 2015.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

8